IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**SCOTT RICHARD NESTOR, and**
**CELINA DAWN SANSONE,**

        **Plaintiffs,**

v.                                          **Civil Action No. 1:20-CV-217**
                                          **(JUDGE KLEEH)**

**KRISTEN D. ANTOLINI,**
**ANNE M. ARMSTRONG,**
**CARRIE POIER, and**
**STEVEN L. SHAFFER,**

        **Defendants.**

## OMNIBUS REPORT AND RECOMMENDATION

On September 3, 2020, *pro se* Plaintiffs Scott R. Nestor and Celina D. Sansone filed a Complaint against Defendants Kristen D. Antolini, Anne M. Armstrong, Carrie Poier, and Steven L. Shaffer. ECF No. 1. Each of the Defendants subsequently filed a Motion to Dismiss for Failure to State a Claim in response. ECF Nos. 24, 25, 26, and 27. The undersigned is also in receipt of Plaintiffs' Response, ECF No. 36, Defendants Antolini, Poier and Shaffer's respective Replies, ECF Nos. 38, 39, and 40, the Plaintiffs' Second Response, ECF No. 41, and Defendant Antolini's Motion to Strike, ECF No. 42.

For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that Defendant Antolini's procedural Motion to Strike, ECF No. 42, be **DENIED**.

Upon consideration, the undersigned **FINDS** this Court lacks subject matter jurisdiction to reverse the state court decision as requested by the Plaintiffs. The undersigned further **FINDS** that the Plaintiffs remaining claims against Defendants for monetary and injunctive relief are barred by various immunity doctrines. Additionally, any claims of misconduct prior to September 2018

are barred by West Virginia applicable two-year statute of limitations. Accordingly, the undersigned **RECOMMENDS** that the each of the Motions to Dismiss for Failure to State a Claim, ECF Nos. 24, 25, 26, and 27, be **GRANTED,** and the Plaintiffs' Complaint, ECF No. 1, be **DISMISSED** with prejudice.

## I.     FACTUAL BACKGROUND

On July 22, 2019, Judge Steven Shaffer[1] entered an Order in the Circuit Court of Preston County directing the filing of an abuse and neglect petition submitted by the West Virginia Department of Health and Human Resources ("WV DHHR"), by statutory counsel, Anne Armstrong, Assistant Prosecuting Attorney of Preston County.[2] The Petition alleged the school-age minor children were suffering from educational neglect, lack of supervision, and exposure to criminal behavior by their parents Celina D. Sansone and Scott R. Nestor.[3] The Order filing the Petition also appointed Kristen D. Antolini as the guardian ad litem for the six minor children named in the petition and appointed court-appointed counsel for the adult respondents.

Celina D. Sansone and Scott R. Nestor claim their home was subsequently "seized" and "no paperwork about the home was given, only a summons to court for a CPS case alleging educational neglect, stating that their homeschool had been 'terminated.'"[4]

On August 16, 2019, a preliminary hearing was scheduled to occur regarding the July 22, 2019 petition. At the hearing, an Order was entered directing the filing an Amended Abuse and

---

[1] According to his Motion to Dismiss, Defendant Steven L. Shaffer was sworn in on May 18, 2018 as circuit court judge for the Eighteenth Judicial Circuit of West Virginia. ECF No. 25-1 at 1.

[2] See ECF No. 24-2.

[3] Petition alleged that there was "no record of the minor school-age children attending or completing any type of schooling in either Preston County or in Monongalia County since 2016." ECF No. 24-2 at 5. Plaintiff Sansone told WV DHHR that the minor children were being homeschooled but failed to provide verification of State-approved homeschooling. The Petition alleged this is a continued failure to remediate conditions of neglect previously investigated in a 2012 abuse and neglect case filed against the same respondents. ECF 24-2 at 8-9.

[4] ECF No. 1 at 6.

Neglect Petition that had been presented to the circuit court by WV DHHR, by statutory counsel Anne M. Armstrong.[5] The court adjourned the proceedings and scheduled an adjudicatory hearing on the original petition and the amended petition for August 20, 2019.

At the August 20, 2019 hearing, guardian ad litem Kristen D. Antolini submitted to the Court a Second Amended Abuse and Neglect Petition.[6] Respondent-parents Scott R. Nestor and Celina D. Sansone allege they were served with the Amended Petition and the Second Amended Petition only after walking into the courtroom for the hearing that day.[7] The Second Amended Petition adopted the allegations from prior petitions and further alleged that the respondent-parents Scott R. Nestor and Celina D. Sansone had exposed their minor children to unsanitary living conditions. The Second Amended Petition also alleged that the parents received their buprenorphine prescriptions out-of-pocket from a provider in Pennsylvania and asserted "[i]t is neglectful that these Adult Respondents likely pay hundreds of dollars per month for buprenorphine out-of-state, rather than utilizing their financial resources for their minor children. Further, the Adult Respondents long term us[e] of Buprenorphine has impaired their judgment and proper parenting skills, and same is neglectful."[8] The Second Amended Petition requested that the court immediately remove the children from the custody of the respondent-parents and be placed into the legal and physical custody of the West Virginia Department of Health and Human Resources. ("WV DHHR").

The August 20, 2019 adjudicatory hearing was converted from an adjudicatory hearing to a status conference.[9] During the proceeding, Judge Shaffer considered evidence presented by

---

[5] ECF No. 24-3.
[6] ECF No. 24-6.
[7] ECF No. 1 at 8.
[8] ECF No. 24-6 at 7.
[9] The hearing was converted upon the motion to Celina Sansone, by and through counsel. ECF No. 24-5.

Assistant Prosecuting Attorney Anne M. Armstrong. This evidence was allegedly not disclosed to the respondent-parents prior to the hearing.[10] Judge Shaffer also considered evidence from guardian ad litem Kristen D. Antolini who presented testimony and photographic evidence regarding the children's living conditions. The adult-respondents, and Plaintiffs here, contend the facts put forth by Kristen D. Antolini at the hearing were "lies."[11] They also maintain that Judge Shaffer did not permit a Child Protective Services ("CPS") worker to testify or submit a report from her visit to their home, despite Nestor and Sansone's request that such evidence be considered.[12] At the hearing, Judge Shaffer allegedly questioned the parents harshly about their use of the prescription drug, buprenorphine, to treat their drug addictions.[13]

At the conclusion of the hearing, Judge Shaffer ordered that the Second Amended Abuse and Neglect Petition be filed and that the minor children be removed from the care, custody, and control of their parents and temporarily placed in the legal and physical custody of WV DHHR.[14] Nestor and Antolini claim their children were "split up 2 by 2 and placed hours away in foster care."[15]

A Third Amended Abuse and Neglect Petition was filed by WV DHHR and Assistant Prosecuting Attorney Anne Armstrong. The Third Abuse and Neglect Petition alleged that the Plaintiffs had concealed their children in violation of August 20, 2019 Order.[16]

 Scott R. Nestor and Celina D. Sansone were arrested in October 2019 after being charged with six counts of felony child concealment due to noncompliance with the Order issued by Judge

---

[10] ECF No. 1 at 8.
[11] ECF No. 1 at 20.
[12] ECF No. 1 at 10.
[13] ECF No. 1 at 11-13, 32.
[14] ECF No. 1 at 12; ECF No. 24-6 at 1.
[15] ECF No. 1 at 12.
[16] ECF No. 24-7.

Shaffer on August 20, 2019. Plaintiffs allege Judge Shaffer initially refused to place Celina D. Sansone "on probation" and set her bail at an excessively large cost of $120,000, whereas Scott R. Nestor's bail was set at $30,000 then reduced to $10,000 upon the condition that he agree to weekly check-ins and drug testing.[17]  Plaintiffs assert that later, after Sansone had paid bail and been out without any bail conditions, Judge Shaffer "placed her on probation" conditions as a "punishment."[18]

Plaintiffs Scott R. Nestor and Celina D. Sansone initiated this civil action on September 3, 2020, against Defendants Kristen D. Antolini, Anne M. Armstrong, Carrie Poier, and Steven L. Shaffer. Reading the *pro se* Complaint liberally, Plaintiffs assert claims for intentional infliction of emotional distress, civil rights violations under 42 U.S.C. § 1983, and civil conspiracy under West Virginia Law.

## II. PARTIES' CONTENTIONS

### A. Plaintiffs' Complaint

In the Complaint, the *pro se* Plaintiffs allege violations of their First, Fourth, Fifth, Sixth, Eighth, and Ninth Amendment Rights. ECF No. 1 at 3 and 5. Plaintiffs allege a conspiracy between the state actors to "present the Court with lies," and deprive Plaintiffs of their constitutional rights. ECF No. 1 at 20. Plaintiffs claim they were unconstitutionally discriminated against for their religiously-motivated[19] choice to homeschool their six children and their choice not to inoculate their children or use allopathic medicine. Plaintiffs further claim that, despite their sobriety, they were discriminated against based upon their substance abuse disorder and their continued

---

[17] ECF No. 1 at 12-13
[18] ECF No. 1 at 13.
[19] The Court would note that while the Plaintiffs invoke their First Amendment rights to Freedom of Religion and Freedom of Speech when discussing their choice to homeschool their six children and their opposition to allopathic medicine, Plaintiffs do not identify their religious affiliation or denomination in their Complaint or any other filings.

compliance with a prescribed buprenorphine substance abuse treatment plan. ECF No. 1 at 11-12, 32.

Plaintiffs allege their due process rights were violated when they were not given proper notice of abuse and neglect petitions being filed prior to hearings on the same, when evidence was improperly introduced to the court by the prosecuting attorney and guardian ad litem without proper notice to all parties, and when they were not permitted to present their own evidence to the circuit court. ECF No. 1 at 8-11.

Plaintiffs further allege their due process rights were violated by a deviation from the deadlines and procedures for child abuse and neglect proceedings which have lengthened and stalled the adjudicatory process. ECF No. 1 at 15. Specifically, Plaintiffs allege that Judge Shaffer violated his obligation to ensure that the abuse and neglect case against them did not "drag on" and that timely multidisciplinary team meetings and hearings be held. ECF No. 1 at 15. Plaintiffs also allege that Defendant Judge Steven Shaffer should have recused himself from the proceedings based upon a supposed conflict due to his prior representation of Plaintiff Sansone's former landlord. ECF No. 1 at 16.

Plaintiffs also argue their due process rights were violated by Assistant Prosecuting Attorney when "[i]n July their home [was] seized, without proper procedure. As the cop stated, he had no choice because of the prosecutor is pushing for us to seize the home." ECF No. 1 at 20. Furthermore, Plaintiffs allege Defendant Armstrong unlawfully infringed upon their "right against unlawful searches and seizures, the right to a fair trial, and their rights to the care, custody and control of their six kids, and their parental rights." ECF No. 1 at 21. Plaintiffs allege transcripts will reveal statements by Defendant Armstrong admitting that the "'underlying reason" for the case was that the Plaintiffs didn't allow CPS in without a court order, which is within their rights

to do so" and Defendant Armstrong "desired to punish them for exercising this right." ECF No. 1 at 21.

Plaintiffs seek to "void" the August 20, 2019 state court order temporarily removing Plaintiffs' children from their custody. ECF No. 1 at 37-38. Plaintiffs are also seeking injunctive relief to stop Defendants from continuing their allegedly unconstitutional and wrongful acts or omissions, and monetary damages, including actual damages, and punitive damages in an amount of five million dollars per parent for a total of ten million dollars. Id.

### B. Defendant Antolini's Motion to Dismiss

Defendant Antolini argues that the Plaintiffs are barred from pursuing claims against her "as she is afforded immunity from any potential liability arising from her conduct as Guardian ad Litem." ECF No. 24-1 at 10. First, Defendant Antolini asserts that guardian ad litems are entitled to quasi-judicial immunity from liability in § 1983 claims because guardian ad litems are so integral to the judicial process that these persons are considered an arm of the judicial officer who is immune. [Id.] Next, Defendant Antolini argues that as a court-appointed guardian ad litem, paid by Public Defender Services, she "should be extended prosecutorial immunity to the same extent as prosecutors are afforded immunity." ECF No. 24-1 at 12.

Defendant Antolini further argues that her actions are further protected by the statutory immunity given those reporting child abuse under West Virginia Code § 49-2-810. Defendant Antolini maintains that she "would still be afforded qualified immunity under the circumstances had she been performing investigative or administrative duties." ECF No. 24-1 at 14. Defendant Antolini also argues that the West Virginia Governmental Tort Claims and Insurance Reform Act provides for quasi-judicial immunity for her as an appointed representative of the infant children

in this case. ECF No. 21-1 at 15. Defendant Antolini asserts that she is also afforded immunity by virtue of litigation privilege. ECF No. 24-1 at 16.

Lastly, Defendant Antolini argues that "[e]ven if it is found that Defendant Antolini is not immune from Plaintiffs' claim of civil conspiracy, no underlying tort occurred to support the conspiracy claim." ECF No. 24-1 at 17. Specifically, Defendant argues Plaintiffs have not actually alleged any wrongful acts by Defendant Antolini or by any other defendant. Id.

### C. Defendant Armstrong's Motion to Dismiss

Defendant Armstrong argues that the Complaint should be dismissed because "all of Plaintiffs' alleged claims involving Ms. Armstrong are either time-barred, fail to disclose any actionable conduct by Mr. Armstrong, or are barred by her absolute prosecutorial immunity or qualified immunity." ECF No. 26-1 at 4. Defendant Armstrong argues that all allegations that occurred in years prior to 2019 are barred under West Virginia's two-year statute of limitations. ECF No. 26-1 at 12. Defendant Armstrong contends that there is not a showing that the Plaintiffs are entitled to relief from Defendant Armstrong in connection with the seizure of the house. Id.

Moreover, Defendant Armstrong asserts that she is entitled to absolutely prosecutorial immunity from Plaintiffs' claims because all activities alleged were performed "as an officer of the court" while Defendant Armstrong "plainly was functioning within the judicial phase of the abuse and neglect process," or while initiating and prosecuting the case. ECF No. 26-1 at 8.

Alternatively, Defendant Armstrong argues that "to the extent any conduct by Ms. Armstrong is claimed or construed to have been outside her role as a prosecutor in litigation, and instead, claimed to involve an administrative or investigatory function, Ms. Armstrong is entitled to qualified immunity." ECF No. 26-1 at 9.

### D.  Defendant Poier's Motion to Dismiss

Defendant Carrie Poier contends Plaintiffs' Complaint should be dismissed by the Court for failure to state a claim upon which relief may be granted because "Plaintiffs' Complaint fails to allege any acts or omissions attributable to Ms. Poier in either her individual or representative capacity." ECF No. 27 at 1. Defendant Poier notes, despite listing Defendant Poier in the case caption and a heading on page twenty-eight of the Complaint, "Plaintiffs fail to make *any mention* of any act, omission, error, or otherwise committed by Ms. Poier." ECF 27-1 at 2. Furthermore, "[w]hile the Complaint does allege acts or omissions made by Defendants Antolini, Armstrong, and Shaffer, it is silent as to Ms. Poier . . . [it] fails to even allege that Ms. Poier has *any* involvement in the complex sequence of events outlined by Plaintiffs in their nearly forty pages of narrative allegations and pleadings." Id. Because there have been no factual allegations made against Defendant Poier, Defendant Poier requests Plaintiffs' Complaint be dismissed for failure to state a claim upon which relief may be granted.

Defendant Poier further argues that, even assuming Plaintiffs' Complaint sufficiently pleads a cause of action, the Complaint should be dismissed based upon her statutory immunity as a CPS worker under West Virginia Code § 49-2-802(h) or under the doctrine of qualified immunity. ECF No. 27-1 at 4-5.

### E.  Defendant Shaffer's Motion to Dismiss

Defendant Shaffer argues that each and every allegation within the Complaint stem from rulings he made in his role as Preston County Circuit Court Judge, and therefore, he claims contained in the Complaint are barred by absolute judicial immunity and warrant dismissal with prejudice. ECF No. 25-1 at 5. Because all of Plaintiffs claims relate to acts and rulings by Judge Shaffer during abuse and neglect and/or criminal proceedings for which the Eighteenth Judicial

Circuit had jurisdiction, Defendant Shaffer asserts is entitled to absolute judicial immunity. ECF No. 25-1 at 9. Furthermore, Defendant contends that the Rooker-Feldman doctrine precludes this federal district court from reviewing any underlying state court decisions as the jurisdiction to review such decisions lies with the Supreme Court of Appeals of West Virginia, and, ultimately, the United States Supreme Court. ECF No. 25-1 at 10.

### F.  Plaintiffs' Response to Motion to Dismiss

On December 7, 2020, Plaintiffs filed a Response to the Defendants' Motions to Dismiss. Within the Response, Plaintiffs elaborate on their claims of discrimination and the alleged violations of their due process rights. Plaintiffs object to the incompleteness of the partial transcript provided by Defendant Antolini to this Court as an attachment to her Motion to Dismiss, ECF No. 36 at 10 and 52, and repeat, at length, the various ways they believe they were harmed as respondents in the abuse and neglect proceedings. Plaintiffs add allegations that since being placed into state custody, their children have been inoculated and medicated without parental consent and against their spiritual and religious beliefs. ECF No. 22-23. They also allege that multidisciplinary team meetings, as mandated by statute, have not been conducted at the intervals required, ECF No. 36 at 47, and object to the way in which an in camera interview was conducted with the minor children, ECF No. 36 at 52.

Plaintiffs argue in their Response that each of the Defendants "have consciously sacrificed their immunit[ies] by abandoning their legal responsibilities." ECF No. 36 at 13.

In regard to Defendant Antolini, Plaintiffs state that a "GAL is the delegate of the State's parens patriae power[,]" then argue that the "State of West Virginia has no Statute giving Guardian Ad Litems immunity" and "GALS [are] not immune from civil liability." ECF No. 36 at 26, 28.

10

Plaintiffs allege Carrie Poier, "the new cps worker on the case, who has no clue of the facts of what happened, is now blindly on board with the prosecution." ECF No. 36 at 12.

Plaintiffs argue by "acting outside of the law," depriving "the Plaintiffs of their religious freedom to home school their children, without a Court proceedings" and "by not allowing motions and petitions to be heard[,]" Defendant Shaffer "has willingly and consciously waived the immunities that a Judge possesses" for the purposes of § 1983 liability. ECF No. 36 at 16. Plaintiffs similarly argue that Defendant Armstrong has waived her immunities. Id.

Plaintiffs further argue that the resulting order is "void, voidable and needs to be proclaimed as such[,]" but they argue that because there has only been a temporary removal and not a final adjudication on parental rights, they believe are unable to appeal the decision in state court. ECF No. 36 at 17-18.

Plaintiffs argue that Rooker-Feldman does not apply, despite the continuing state court matter, to the extent that the Plaintiffs are seeking "injunctive relief and damages for violation of rights." ECF No. 36 at 25, 34. They argue that because Defendants worked under "color of law" this case falls within the jurisdiction of the federal court under § 1983.

**G. Defendant Antolini's Objection and Reply**

Defendant Antolini objects to Plaintiffs' Response to Defendant's Motion to Dismiss on the grounds that the response is 54 pages in length. Defendant Antolini argues that this Court should dismiss the Plaintiffs' Response or require Plaintiffs be required to resubmit their response in conformance with Local Rule of Civil Procedure 7.02.

Defendant Antolini proceeds in her Reply to argue that the factual allegations included in Plaintiffs' Response which were not contained in the initial complaint should not be considered as responsive to the Motion to Dismiss. Defendant Antolini argues Plaintiffs' own admissions support

11

that her conduct as well as the August 20, 2019 state court order were appropriate because the Plaintiffs failed to place their children in school. Lastly, Defendant Antolini argues that Plaintiffs' Complaint makes no allegations that would provide an exemption from the immunity the West Virginia Code provides for guardians ad litem.

### H.  Defendant Shaffer's Reply

Defendant Shaffer argues in his Reply that none of the allegations in Plaintiffs' Complaint nor Plaintiffs' Response are sufficient to deprive Defendant Shaffer of his judicial immunity. Additionally, Defendant Shaffer reiterates his argument that the Rooker-Feldman doctrine precludes this Court from exercising jurisdiction because Plaintiffs are, in essence, seeking the review of a state court proceeding and are seeking monetary and injunctive relief in relation to that adverse state court judgment.

### I.  Defendant Poier's Reply

Defendant Poier argues in her Reply that Plaintiffs' Response does not address the 12(b)(6) standard or illuminate any allegations in their Complaint which would constitute a valid claim upon which relief may be granted as to Defendant Poier. Defendant Poier notes Plaintiffs' intention to use "Exhibit M" which is purportedly the "Out-Of-Home Safety Plan" drafted by Carrie Poier, "who was not involved in the case until much later." ECF No. 40 at 1 (citing ECF No. 36 at 43). Defendant Poier argues that all of the limited information provided by Plaintiffs essentially "admit[s] that their allegations as to Ms. Poier only involve professional decisions and actions taken within the scope of her duties and responsibilities as an employee of Child Protective Services." ECF No. 40 at 2. Accordingly, Defendant Poier reiterates her request that this Court enter an order dismissing the Complaint as to Defendant Poier with prejudice.

### J. Plaintiffs' Second Response

The majority of Plaintiffs' Second Response is verbatim identical to the information put forth in the first Response.[20] Plaintiffs elaborate on information regarding the status of the minor children, particularly Plaintiffs' thirteen-year-old daughter whom the Plaintiffs claim has struggled with suicidal behavior since entering foster care, and regarding an in camera interview with the children which was ordered by Judge Shaffer. ECF No. 41 at 6. Plaintiffs rephrase their claims regarding Judge Shaffer's "secret meeting" with the children, without their "knowledge or involvement" and without a transcript prepared to be provided to the Plaintiffs. Plaintiffs argue this method of conducting an in camera interview violates the Plaintiffs' due process rights. ECF No. 41 at 6-7.

### K. Defendant Antolini's Motion to Strike

In her Motion to Strike, Defendant Antolini asserts that "[p]ursuant to LRCiv.P 7.02, Motion Practice, a party is entitled to file only one response to a motion and the moving party is entitled to a file a reply as prescribed by the Local Rules." ECF No. 42 at 2. Defendant Antolini argues that, even considering Plaintiffs are *pro se*, because they did not follow the LRCiv.P 7.02 and filed multiple responses to the motions of the Defendants, the second response filed by the Plaintiffs should be struck from the record. Id.

### III. PROCEDURAL OBJECTIONS

Under Rule 7.02 of the Local Rules of Civil Practice, supporting memoranda for motions, responses, and replies shall not exceed twenty-five (25) pages and are subject to the various

---

[20] Compare ECF No. 41 at 2-4, Paragraph 2 with ECF No. 36 at 14-15, Paragraph 9 and ECF No. 41 5-6, Paragraph 3 with ECF No. 36 at 16-17, Paragraph 10 (arguing no immunity available for Defendant Shaffer); ECF No. 41 8-9 with ECF No. 36 at 19 (discussing judicial accountability); ECF No. 41 at 9, Paragraph 6 with ECF No. 36 at 25, Paragraph 14 (arguing Rooker-Feldman does not apply); ECF No. 41 9-10 with ECF No. 36 at 26; ECF No. 41 10-17 with ECF No. 36 at 32-38 (citing case law in support); ECF No. 41 at 11 with ECF No. 36 at 19.

restrictions set forth therein. L. R. Civ. P. 7.02. Except by leave of the Court, "parties shall not file surreply or surrebuttal memoranda." The general rule, as properly articulated by Defendant Antolini, is that a party is entitled to file only one response to a motion, and the moving party is entitled to file a reply to that response.

Here, Defendants filed four individual motions to dismiss, each including the requisite supporting memorandum of law. Some Defendants included attachments as allowed by the local rules. For example, Defendant Antolini included seven exhibits while made the total length of her electronic filing 72 pages. Under the Local Rules, Plaintiffs were entitled to file a response to each of the Defendant's Motions. Plaintiffs would have been within their rights to file separate responsive memorandums each with their own attachments, but instead, Plaintiffs filed one omnibus response. The now contested Second Response largely repeated and elaborates on the same information from the first Response.

Both the Supreme Court of the United States and the United States Court of Appeals for the Fourth Circuit instruct that district courts must not hold *pro se* plaintiffs to the same stringent standards for their pleadings as those formal pleadings filed by lawyers. See e.g. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009)(quoting Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir.1978))("Liberal construction of the pleadings is particularly appropriate where, as here, there is a pro se complaint raising civil rights issues.").

Consistent motion practice is surely imperative, and as Defendant Antolini rightfully notes, all parties "are bound to follow the rules of the court." ECF No. 42 at 2. However, in interest of justice and judicial economy, heeding the advice of superior court precedent, the undersigned recommends leniency under these circumstances. As the information contained in the Second

Response is largely duplicative to the information presented in the first lengthy Response, the Court's consideration of the same would not prejudice Defendants nor benefit Plaintiffs. The undersigned directs Plaintiffs to abide by the Local Rules of Civil Procedure in all future filings and warns that a failure to do so could lead to superfluous filings being struck from the record.

Accordingly, the undersigned **RECOMMENDS** that Defendant Kristen Antolini's Motion to Strike, ECF No. 42, be **DENIED** and Plaintiffs' Second Response, ECF No. 41, remain on record.

### III. LEGAL STANDARDS

#### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action for subject matter jurisdiction. The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In considering a 12(b)(1) motion to dismiss, a "trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Id. (*citing* Mims v. Kemp, 516 F.2d 21 (4th Cir.1975)). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." Id. The district court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (*citing* Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987)).

Furthermore, a district court "must dismiss a claim if, at any time, it appears that the court lacks jurisdiction over the subject matter of the claim." Fed. R. Civ. P. 12(h)(3); Duffield v. Memorial Hosp. Ass'n, 361 F. Supp. 398 (S.D. W. Va. 1973), *aff'd sub. nom.* Duffield v. Charleston Area Medical Ctr., 503 F.2d 512 (4th Cir. 1974); *see also* Bolin v. Chavez, 210 F.3d 389 (10th Cir. 2000)(permitting *sua sponte* dismissal for lack of subject matter jurisdiction under Rule 12(h)(3) of the Federal Rules of Civil Procedure).

### B.  Motion to Dismiss for Failure to State a Claim

To state a claim for relief, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement serves to give "the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008). Detailed factual allegations are not required. Twombly, 550 U.S. at 555. The factual allegations simply must be "enough to raise a right to relief above the speculative level." Id. The "sheer possibility that a defendant has acted unlawfully" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Facial plausibility is established when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Additionally, a court must "liberally construe" complaints filed *pro se*. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009).

16

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir.2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir.1993)).

When rendering its decision, a court should consider only the allegations contained in the complaint, the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice. Conklin v. Jefferson Cty. Bd. of Educ., 205 F. Supp. 3d 797, 803 (N.D.W. Va. 2016)(citing Anheuser–Busch, Inc. v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). A district court should grant a motion to dismiss where the complaint is insufficient to state a claim to relief, outlined by factual allegations, that is plausible on its face.

## IV. ANALYSIS

**A. Under the Rooker-Feldman doctrine, this Court lacks the subject matter jurisdiction to "void" the state court decision. However, this Court may exercise subject matter jurisdiction over Plaintiffs' § 1983 claims seeking monetary and injunctive relief.**

The undersigned would note that, despite the fact that Defendant Shaffer is the only defendant who addressed this issue of jurisdiction in his Motion to Dismiss, this Court must dismiss a claim as to all Defendants where it lacks subject matter jurisdiction. District courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010).

Rooker-Feldman is a "jurisdictional" doctrine barring the losing party in state court "'from seeking what in substance would be appellate review of the state judgment in a United States district court.'" Amer. Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir. 2003) (*quoting* Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994)).

The Rooker-Feldman doctrine serves to protect the notion that jurisdiction to review state court decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997)(*citing* District of Columbia Ct. App. v. Feldman, 460 U.S. 462, 482-86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923)); see also Friedman's Inc. v. Dunlap, 290 F.3d 191, 196 (4th Cir. 2002)(*quoting* Jordahl v. Democratic Party of Va., 122 F.3d 192, 196 (4th Cir. 2002)("[F]ederal courts are divested of jurisdiction 'where entertaining the federal claim should be the equivalent of an appellate review of the state court order.'")).

The United States Court of Appeals for the Fourth Circuit has explained that "the Rooker-Feldman doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." Davani v. Virginia Dept. of Transp., 434 F.3d 712, 713 (4th Cir. 2006).

In Rooker, the Plaintiffs brought suit in federal district court seeking a declaration that a state-court judgment against them was "null and void" because, they alleged, it was in violation of the Constitution. Rooker, 263 U.S. at 414-15, 44 S.Ct. 149. The United States Supreme Court held that the district court lacked subject-matter jurisdiction over the claim because "under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify [a state court] judgment for errors of [Constitutional] character." Id. at 416, 44 S.Ct. 149. In Feldman, the United States Supreme Court held that "if the

constitutional claims presented to [the district court] are inextricably intertwined with the state court's [ruling] in a judicial proceeding ... then the district court is in essence being called upon to review the state court decision. Feldman, 460 U.S. at 482 n. 16, 103 S.Ct. 1303 (emphasis added).

Rooker-Feldman applies whenever litigants institute a federal action in an attempt to seek review of a state court decision, regardless of how the attempt is styled or presented. Johnson v. HCR Manorcare LLC, No. 1:15-CV-189, 2015 WL 6511301, at *3 (N.D.W. Va. Oct. 28, 2015) (citing Amer. Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir. 2003). The "controlling question" is whether the party "seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision, not whether the state court judgment is currently subject to reversal or modification" Id. (citing Jordahl v. Democratic Party of Va., 122 F.3d 192, 202 (4th Cir. 1997)). The Rooker-Feldman doctrine "is in no way dependent upon the temporal procedural posture of the state court judgment." Id.

To be certain, the Fourth Circuit has repeatedly held that the Rooker-Feldman doctrine applies not only to final state court judgments, but also "applies to interlocutory orders issued by state courts." Brown & Root Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000). See also Amer. Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 319-320 (4th Cir. 2003) ("The fact that such an order may be theoretically subject to modification does not impact the Rooker-Feldman analysis. It is sufficient that a state court render a decision resolving an issue that is the basis for the federal action, even if the decision comes in the form of an interlocutory or preliminary order").

The question of whether § 1983 claims arising from the actions of a state official in state abuse and neglect proceedings or custody proceedings are within the subject matter jurisdiction of a federal district court or barred by the Rooker-Feldman doctrine has been addressed by the U.S. Courts of Appeals for the Third, Sixth, Seventh, and Eleventh Circuits with varying results. This

19

is because "it is often 'difficult to distinguish' between situations in which the plaintiff is seeking to set aside a state court judgment and ones in which the claim is independent." Brokaw v. Weaver, 305 F.3d 660, 665 (2002) (quoting Edwards v. Illinois Bd. Of Adm. to the Bar, 261 F.3d 723, 728-729 (7th Cir. 2001). To date, the Fourth Circuit has not addressed this precise question.

In Ernst v. Child & Youth Servs. Of Chester County, the Third Circuit held that the Rooker-Feldman doctrine did not bar a grandmother's § 1983 substantive due process challenge to recommendations made by child welfare workers to a state court adjudicating a dependency proceeding. Ernst v. Child & Youth Servs. of Chester County, 108 F. 3d 486 (3rd Cir. 1997). The plaintiff's substantive due process claim was based upon allegations that the worker's recommendations were made due to malice or personal bias. The Third Circuit held that a § 1983 damages claim is not the functional equivalent of an appeal from a state court judgment, especially where the plaintiff's substantive due process claims were never addressed by the state court. A ruling in the plaintiff's favor on the constitutional claims, which were not addressed in the underlying state court proceeding, would not require the federal court to invalidate the state court judgment. Therefore, Rooker-Feldman did not divest the court of subject matter jurisdiction, and plaintiff was permitted to maintain their § 1983 damages claim in federal court. See also Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992) (a party cannot escape Rooker–Feldman by raising a new constitutional theory in federal court *unless* the party lacked a realistic opportunity to fully and fairly litigate the constitutional claim in the state court proceeding).

The Sixth Circuit came to a similar conclusion in Holloway v. Brush, 220 F.3d 767, 778-779 (6th Cir. 2000). In Holloway, a mother brought a § 1983 claim against the county and a county social worker alleging both interfered with her right to the custody of her children. The Sixth Circuit held Rooker-Feldman did not bar the federal claim because the mother was not seeking

20

review of the state court's custody order but rather challenging "whether certain actions in the course of those proceedings may have involved her federal constitutional rights for which the responsible party may be held liable" Id. at 779. Because the plaintiff had not raised the questions of personal liability and § 1983 monetary damages in state court, the Sixth Circuit found that Rooker-Feldman did not bar her claim. Id. Cf. Reguli v. Guffee, 371 Fed. Appx. 590 (6th Cir. 2010) (Rooker-Feldman barred § 1983 claims seeking to challenge direct results of state juvenile court orders but did not bar claims regarding the alleged violations of plaintiff's constitutional rights.).

Most notably, in Brokaw v. Weaver, 305 F.3d 660, 665 (7th Cir. 2002), the Seventh Circuit followed the reasoning of the Third and Sixth Circuits, but also clarified a key determination for these types of Rooker-Feldman analyses:

> While the Rooker-Feldman doctrine bars federal subject matter jurisdiction over issues raised in state court, and those inextricably intertwined with such issues, "an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have *a reasonable opportunity* to raise the issue in state court proceedings.

Id. (citing Long v. Shorebank Development Corp., 182 F. 3d 548, 558 (7th Cir. 2002)(emphasis added).

In Brokaw, plaintiff brought an action alleging a conspiracy among county officials to report false claims of child neglect against the plaintiff's parents which resulted in her being removed from her parent's home. The Seventh Circuit explained that plaintiff "is not merely claiming that the decision of the state court was incorrect or that the decision violated her constitutional rights; rather she is alleging that the people involved in the decision to forcibly remove her from her home . . .  violated her constitutional rights, independently of the state court decision." Brokaw, 305 F.3d at 665. As a juvenile, even though she was technically a party to the state court proceedings, the plaintiff was not allowed to be present at the adjudication hearing and, furthermore, was not represented by a guardian ad litem or attorney. The court found that because

21

the plaintiff was not given a reasonable opportunity to raise her constitutional claims in the state court adjudication, Rooker-Feldman doctrine did not bar her suit. See also Jensen v. Foley, 295 F. 3d 745 (7th Cir. 2002) (Rooker-Feldman did not bar a §1983 suit to remedy the injury inflicted by a state court's order to remove a child from the parents' custody without a pre-deprivation hearing).

To contrast, the Eleventh Circuit has rejected the reasoning of the Third and Sixth Circuits. Goodman v. Sipos, 259 F.3d 1327 (11th Cir. 2001). In Goodman, the Eleventh Circuit held that Rooker-Feldman barred jurisdiction over due process claims brought by a mother and son for an allegedly unconstitutional state investigation and removal proceedings which included *ex parte* proceedings. Specifically, the Eleventh Circuit found that "[t]he Rooker-Feldman doctrine is broad enough to bar all federal claims which were or should have been, central to the state court decision even if those claims seek a form of relief that might not have been available to the state court." In Goodman, because the mother and son's federal claim succeeded only to the extent that the state court wrongly decided he custody issue and because the plaintiffs, as parties to the state court proceedings, had a reasonable opportunity to present the issues in the state court proceedings, Rooker-Feldman barred the federal courts exercising jurisdiction.

First, here, Plaintiffs are asking this Court to "void" the August 20, 2019 decision which removed Plaintiffs' six infant children from their custody and placed them into the temporary legal and physical custody of the state of West Virginia. ECF No. 1 at 37-38. In other words, Plaintiffs are requesting this Court review and reject the decisions of the Circuit Court of Preston County.

Under Rule 49 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, "[a]ppeals of orders under W.Va. Code § 49-4-601, *et seq.*, are governed by the Revised Rules of Appellate Procedure." Furthermore, the Supreme Court of Appeals of West Virginia is directed to give priority to appeals of child abuse and/or neglect proceedings and

termination of parental rights cases, including an accelerated scheduling for such cases. W.Va. Code § 49-4-601(j).

Plaintiffs' request that this Court retain jurisdiction and exercise its "authority" and "fairness." ECF No. 36 at 2. Plaintiffs reason they "have faith that the Higher Courts in W.V." to hear their claim. ECF No. 36 at 1.. However, the Rooker-Feldman doctrine, as interpreted *by any of the above-mentioned circuits*, prohibits federal district court from interfering with state courts by directly reviewing a state court decision and passing judgment upon the merits of that decision.

Appellate review of this decision is the domain of the Supreme Court of Appeals of West Virginia, not the U.S. District Court for the Northern District of West Virginia. The undersigned agrees with the analysis put forth by Defendant Shaffer – to the extent that the Plaintiffs seek to reverse the state court's August 2019 order, this Court is without subject matter jurisdiction, and "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012-16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n. 10 (4th Cir. 1999).

Accordingly, the undersigned **RECOMMENDS** the District Judge **FIND** that the Rooker-Feldman doctrine precludes Plaintiffs' indirect attempt to appeal state court decisions to this Court, and Plaintiffs' claim seeking reversal of the state court order be **DISMISSED** for lack of subject-matter jurisdiction.

However, to the extent that Plaintiffs' Complaint seeks monetary damages and injunctive relief under § 1983 for the allegedly unconstitutional and injurious actions of state officials, the undersigned believes this Court may exercise subject-matter jurisdiction. Using the analysis from the majority of circuit courts, while the Rooker-Feldman doctrine bars federal subject matter jurisdiction over issues raised in state court, and those inextricably intertwined with such issues,

an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings. Brokaw, 305 F.3d at 665.

Here, Plaintiffs claim, *inter alia*, that their due process rights were violated by the Defendants, in part, because of the Defendants' biases against the Plaintiffs' religiously-motivated homeschooling and inoculation choices as well as the Plaintiffs' substance abuse disorder treatment. Plaintiffs allege that, based upon this bias, *inter alia*, they have been maliciously prosecuted, had their property interested infringed upon, and have been deprived of proper notice of and procedures during child abuse and neglect proceedings and/or criminal proceedings. Plaintiff argue these actions were individually and conspiratorially perpetrated by the Defendants. Although the Plaintiffs were named parties to the suit and present with representation at various hearings, there is no indication to the Court pre-discovery that Plaintiffs' §1983 claims that their federal constitutional rights were being violated by the individual state actors were addressed at any of underlying state court hearings.

Accordingly, the undersigned **RECOMMENDS** the District Judge **FIND** that the Rooker-Feldman doctrine does not preclude this Court from exercising subject-matter jurisdiction over the § 1983 claims for monetary damages and injunctive relief which were not addressed in the underlying state court proceedings.

**B. West Virginia's two-year statute of limitations bars Plaintiffs' claims for injuries occurring prior to 2018.**

Plaintiffs' Complaint makes passing references to claims of alleged misconduct by state actors in a prior abuse and neglect case, the unlawful seizure of the couple's home in July 2018, the unlawful arrest of Plaintiff Sansone at Defendant Armstrong's direction for a "ticket" sometime prior to 2019. ECF No. 1 at 2, 19-20. Plaintiffs allege that "Anne Armstrong conducted a 3 year long fishing expedition into this family's home, intruding upon their family, and private home life,

for no good, factual reason." ECF No. 1 at 19. The prior Preston County Circuit Court abuse and neglect case began in 2012 and extended into 2014. ECF No. 24-2 at 7.

Here, Defendant Armstrong correctly argues that any claims of misconduct that occurred prior to 2018 are barred under West Virginia's applicable two-year statute of limitations.

42 U.S.C. § 1983 does not itself specify a statute of limitations for claims brought thereunder. Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 388 (4th Cir. 2014). Rather, such claims are governed by "the most analogous state-law cause of action," which is that for a personal injury claim. Id. See also Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (civil rights claims governed by state personal injury statutes of limitations). Because the alleged acts occurred in West Virginia, the Court must look to West Virginia law. State law provides that "[e]very personal action for which no limitation is otherwise prescribed shall be brought . . . within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]" W. Va. Code § 55-2-12(b) (emphasis added). A personal injury claim is such a claim for which no statute of limitations is specifically set forth in West Virginia. Thus, it is governed by this "residual" statute of limitation – that is, the statute of limitations for causes of action for which no statute of limitations is otherwise specified. Moreover, Plaintiff cites no authority which would toll the two-year statute of limitations under these circumstances, nor is the undersigned aware of any.

Although state law determines the applicable statute of limitations, federal law dictates the time of accrual for civil rights causes of action. Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). "[T]he time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." Id. In the instant matter, Plaintiff would have known their injury upon the seizure of the home in July 2018. Similarly, the date of injury in regard to the allegedly unlawful

arrest would be the date of Plaintiff Sansone's arrest. Though there are limited facts regarding the prior abuse and neglect case, the aggrieved injuries would have happened during those proceedings between 2012 and 2014 and shortly thereafter.

In sum, Plaintiffs' claims are governed by a two-year statute of limitations. Plaintiffs filed their Complaint until September 3, 2020. The undersigned concludes that the applicable two-year statute of limitations bars any claims for injuries within the Complaint arising prior to September 2018. Accordingly, the undersigned **RECOMMENDS** that the District Judge dismiss any and all claims found within the Complaint barred by the applicable statute of limitations.

## C. Plaintiffs' claims against Defendants Antolini, Armstrong, and Poier are barred by qualified immunity and should be dismissed for failure to state a claim upon which relief may be granted.

The Supreme Court of the United States has emphasized "the importance of resolving immunity questions at the earliest possible stage in litigation ...." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (quoting Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir.2011). "One such defense is qualified immunity." Id. Accordingly, the undersigned will first consider the immunity defense of qualified immunity which was raised by the Plaintiffs in their Complaint and Response and by Defendant Antolini, Defendant Armstrong, and Defendant Poier in their respective 12(b)(6) motions.

It should be noted that while a defendant may assert a qualified immunity defense through a Rule 12(b)(6) motion, 'the defense faces a formidable hurdle' and "is usually not successful." Owens v. Baltimore City State's Attorney's Office, 767 F.3d 379, 396 (4th Cir. 2014) (quoting

Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 191–92 (2d Cir. 2006)). This is because, at this

very early stage in the proceedings, dismissal under Rule 12(b)(6) is only appropriate if the plaintiff

"fails to state a claim that is plausible on its face." Id. at 396 (quoting Iqbal, 556 U.S. at 678)

(emphasis in original). See e.g. P.A. v. Fayette Cty. Bd. of Educ., No. 2:19-CV-00705, 2020 WL

4740481, at *5 (S.D.W. Va. Aug. 14, 2020) ("[T]his Court finds that, at this early stage in these

proceedings, Plaintiffs have sufficiently alleged a plausible violation of the Fourth Amendment

such that Defendants' assertion of qualified immunity is defeated.")

A civil action filed pursuant to 42 U.S.C. § 1983 permits "a party who has been deprived

of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes

at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882.

42 U.S.C.§ 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage.....subjects, or causes to be subjected, any citizen of the United States...to the
> deprivation of any rights...secured by the Constitution and laws, shall be liable to
> the party injured in any action at law...or suit in equity.

The initial inquiry in a § 1983 case is as follows: (1) was the conduct complained of committed by

a person acting under the color of state law and (2) did that conduct deprive the complainant of

rights, privileges, or immunities secured by the Constitution or laws of the United States. *See*

Browning v. Seifert, No. 1:13CV23, 2014 WL 1048494, at *14 (N.D.W. Va. Mar. 18, 2014) (*citing*

Hale v. Tallapoosa County, 50 F.3d 1579 (11th Cir. 1995) *and* Harvey v. Harvey, 949 F. 2d 1127,

1130 (11th Cir. 1992)). "In order for an individual to be liable under § 1983, it must be

'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's

rights.'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir.1985) (*citing* Vinnedge v. Gibbs, 550 F.2d

926, 928 (4th Cir.1977)).

Qualified immunity "is an affirmative defense that 'shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Occupy Columbia v. Haley, 738 F.3d 107, 118 (4th Cir. 2013)(*quoting* Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir.2006)). Qualified immunity does not protect government officials who "knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). However, in the "gray areas, where the law is unsettled or murky, qualified immunity affords protection to [a government official] who takes an action that is not clearly forbidden—even if the action is later deemed wrongful." Occupy Columbia, 738 F.3d at 118 (*quoting* Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir.2001)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992), cert. denied, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

In other words, "qualified immunity provides government officials who are performing discretionary functions a defense from liability for § 1983 civil damages *unless*: (1) the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; *and* (2) this violation was of a clearly established right of which a reasonable person would have known." Occupy Columbia, 738 F.3d at 121 (emphasis added)(internal citations omitted). Each prong will be analyzed by the undersigned below.

The "sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution and shielded by the Due Process Clause of the Fourteenth Amendment." Hodge v. Jones, 31 F.3d 157, 163 (4th Cir. 1994)(citations omitted). See also Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972) (familial integrity shielded by Ninth

28

Amendment and Due Process and Equal Protection Clauses of Fourteenth Amendment). "The state's removal of a child from his parents indisputably constitutes an interference with a liberty interest of the parents and thus triggers the procedural protections of the Fourteenth Amendment." Jordan by Jordan v. Jackson, 15 F.3d 333, 342 (4th Cir. 1994). However, the state simultaneously "has a legitimate interest in protecting children from neglect and abuse and in investigating situations that may give rise to such neglect and abuse." Martin v. Saint Mary's Dep't Soc. Servs., 346 F.3d 502, 506 (4th Cir. 2003)(citing Renn v. Garrison, 100 F.3d 344, 349–350 (4th Cir.1996)). Therefore, the right to familial integrity is "amorphous" and may not be "sufficiently clear" in many situations as to have "clearly established" legal rules for the purposes of holding officials personally liable. Martin v. Saint Mary's Dep't Soc. Servs., 346 F.3d 502, 506 (4th Cir. 2003).

Here, the allegations underlying the claim, if true, would establish violations of Plaintiffs' federal rights, including, but not limited to, the Plaintiffs' substantive and procedural due process rights, freedom of religion, and freedom to familial integrity, possibly including the right to direct the educational upbringing of one's children. Even so, the contours of these rights are not clearly established.

The Complaint indicates that each Defendant were performing discretionary functions as officials with authority granted by the state when the alleged violations took place. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were "clearly established" at the time it was taken[.] Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987). The relevant questions are whether a reasonable guardian ad litem would believe Defendant Antolini's conduct to be lawful, in light of clearly established rights, whether a reasonable prosecutor would believe

Defendant Armstrong's conduct to be lawful, in light of clearly established rights, and whether a reasonable child protective services worker would believe Defendant Poier's conduct to be lawful in light of clearly established rights. Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). See also Daugherty v. Campbell, 935 F.2d 780, 783 (6th Cir. 1991).

It is unclear the extent to which an investigating state court actors must consider an offending parent's religious motivations when those parents willfully refuse to comply with the state's homeschool reporting requirements and that non-compliance results in education neglect. It also has not been clearly established the extent to which one's prescribed suboxone treatment for a substance abuse disorder may be used against a respondent in a state court proceeding or whether a state official's bias against certain substance abuse treatment programs may provide grounds for a claim of disability discrimination. There are not clearly established legal rules for these murky areas of law. In this situation, with the competing interests of the state in protecting children from educational, hygienic, and medical neglect and the parents in maintaining the spiritual sanctity of their family unit, Plaintiffs have failed to state a claim of violation of clearly established law. It appears to the undersigned, based upon the allegations articulated in Plaintiffs' Complaint, that the process undertaken by the Defendants follows the standard progression of officials investigating the status of children suspected to be neglected. Plaintiffs have not shown that the Defendants' actions were not objectively unreasonably, in light of clearly established legal rules, as to merit the loss of qualified immunity.

Accordingly, because of the existence of the meritorious affirmative defense of qualified immunity, the undersigned **RECOMMENDS** the District Judge **FIND** that Plaintiffs' Complaint,

ECF No. 1, fails to state a plausible claim for relief against Defendants Antolini, Armstrong, and

Poier, and Plaintiffs' claims against them be dismissed.

> **D. Additionally, Plaintiffs' claims against Defendant Armstrong must be dismissed because absolute prosecutorial immunity precludes suit for her conduct in the abuse and neglect adjudication.**

Plaintiffs claim that Defendant Armstrong "has used her power and position to deprive

these parents of their constitution rights, due process and the care, custody and control of their

children." ECF No. 1 at 21. Specifically, Plaintiffs allege Defendant Armstrong deprived the

Plaintiffs of their right to due process of law, their right against unlawful searches and seizures,

their right to a fair trial, and their parental rights to oversee the care, custody, and control of their

six kids. Id. Plaintiffs further claim Defendant Armstrong caused their home to be seized, and

"conspired with the GAL to present the court with lies[.]" ECF No. 1 at 20.

"Prosecutors enjoy absolute immunity from civil liability for prosecutorial functions such

as, initiating and pursuing a criminal prosecution, presenting a case at trial, and other conduct that

is intricately associated with the judicial process . . . It has been said that absolute prosecutorial

immunity cannot be defeated by showing that the prosecutor acted wrongfully or even maliciously,

or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus

proceeding." Mooney v. Frazier, 693 S.E.2d 333 (W. Va. 2010).

In a 42 U.S.C. § 1983 context, absolute immunity extends to prosecutors "for conduct of

prosecutors that was 'intimately associated with the judicial phase of the criminal process."

Buckley v. Fitzsimmons, 509 U.S. 259 (1993) (quoting Imbler v. Pachtman, 424 U.S. 409 (1976)).

Absolute prosecutorial immunity encompasses "the duties of the prosecutor in his role as advocate

for the State" including even "actions preliminary to the initiation of a prosecution and actions

apart from the courtroom[.]" Imbler, at 431, n. 33, 96 S.Ct., at 995, n. 33. This includes a

prosecutor's conduct when acting on behalf of the state in an abuse and neglect proceeding. Shirley v. Drake, No. 98-1750, 1999 WL 202671, at *2 (4th Cir. 1999). See also Frederick v. W. Virginia Dep't of Health & Hum. Servs., No. 2:18-CV-01077, 2019 WL 1198027, at *41 (S.D.W. Va. Feb. 15, 2019), report and recommendation adopted, No. 2:18-CV-01077, 2019 WL 1173358 (S.D.W. Va. Mar. 13, 2019), reconsideration denied, No. 2:18-CV-01077, 2019 WL 1748532 (S.D.W. Va. Apr. 18, 2019) ("[S]o long as the attorney for the DHHR herein was acting as an advocate in a prosecutorial role, she is entitled to absolute immunity.") The Supreme Court of Appeals of West Virginia has identically adopted doctrine of prosecutorial immunity. Corra v. Conley, No. 13-0430, 2013 WL 6153013, at *3 (W. Va. Nov. 22, 2013).

However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615, 125 L. Ed. 2d 209 (1993). "Qualified immunity 'represents the norm' for executive officers, so when a prosecutor "functions as an administrator rather than as an officer of the court" she is entitled only to qualified immunity." Id., 509 U.S. at 273, 113 S. Ct. at 2615–16, 125 L. Ed. 2d 209 (citations omitted).

Defendant Armstrong is an assistant prosecuting attorney in Preston County, West Virginia "who handles exclusively abuse and neglect cases." ECF No. 26-1 at 2. Defendant Armstrong argues that she is entitled to absolute prosecutorial immunity for conduct closely related to the underlying judicial proceedings at issue. The undersigned agrees. Defendant Armstrong, as assistant prosecuting attorney, is immune from suit for the conduct necessary to present evidence during an abuse and neglect proceeding, even where that courtroom conduct leads to a harmful or unfavorable outcome for the respondents. Communicating with the GAL and the judge in order to

introduce photographs into evidence is the type of courtroom conduct, intimately associated with the judicial process, for which prosecutors enjoy absolute immunity – even if the admission of said photographs is later deemed wrongful. Initiating abuse and neglect proceedings or criminal actions against those suspected of violating the state code is the type of conduct for which prosecutors enjoy absolute immunity – even if a prosecutor was motivated by bias or malice.

Due to the doctrine of absolute prosecutorial immunity, Defendant Armstrong is immune from suit for all of her prosecutorial conduct related to the judicial phase of the criminal process. This includes presenting and using evidence, ECF No. 1 at 8, and "wag[ing] a full fledge case against the parents," ECF No. 1 at 9, as described by the Plaintiffs in their Complaint. Due to the doctrine of qualified immunity, as articulated above, Defendant Armstrong is immune from suit for all administrative duties and investigatory functions in this matter not related to the initiation of a prosecution or judicial proceedings. This includes investigating the Plaintiffs' residences as described by the Plaintiffs in their Complaint. Because the state of West Virginia has likewise adopted the doctrine of prosecutorial immunity, Defendant Armstrong is not only immune from suit for the federal claims brought under § 1983, but also for the claims of intentional infliction of emotional distress and civil conspiracy as alleged in the Complaint.

Accordingly, the undersigned **RECOMMENDS** to the District Judge that Defendant Armstrong's Motion to Dismiss, ECF No. 26, be **GRANTED** and all claims against Defendant Armstrong be dismissed for failure to state a claim upon which relief may be granted.

### E. Defendant Antolini is benefits from immunity from suit under the doctrines of quasi-judicial immunity, prosecutorial immunity, and litigation privilege.

Plaintiffs claim that Defendant Antolini conspired with other state actors and presented falsehoods to the Court which resulted in the deprivation of the Plaintiffs' civil liberties. Defendant Antolini argues that as the court-appointed guardian ad litem paid by Public Defender Services

and charged with representing the best interests of the children in the abuse and neglect proceedings, she should be afforded quasi-judicial immunity, prosecutorial immunity, litigation privilege, as well as qualified immunity for her investigative and administrative role.

It has been had aptly stated:

> caselaw analyzing and applying the various governmental immunities—sovereign, judicial, quasi-judicial, qualified, and statutory – to the vast array of governmental agencies, officials, employees and widely disparate factual underpinnings has created a patchwork of holdings. . . . Much of the absence of harmony is simply the nature of the beast: immunities must be assessed on a case-by-case basis in light of the governmental entities and/or officials named and the nature of the actions and allegations giving rise to the claim.

Leonard v. Starkey, No. 1:14-CV-42, 2016 WL 183557, at *5 (N.D.W. Va. Jan. 14, 2016)(quoting West Virginia DHHR v. Payne, 231 W. Va. 563, 571, 746 S.E.2d 554, 562 (2013)).

The undersigned recognizes that a patchwork of overlapping yet incongruous doctrines provides immunity to guardians ad litem such as Defendant Antolini; the undersigned will separately assess each doctrine asserted.

1. Quasi-judicial Immunity

The U.S. Supreme Court has established that "judges, prosecutors, witnesses, and other actors in the judicial process are immune from § 1983 or Bivens liability for misfeasance of their duties." Fleming v. Asbill, 42 F.3d 886, 889 (4th Cir. 1994). See Briscoe v. LaHue, 460 U.S. 325, 345–46, 103 S.Ct. 1108, 1121, 75 L.Ed.2d 96 (1983) (witnesses); Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (administrative law judges); Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (state judge); Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecuting attorney).

Following this precedent, the U.S. Court of Appeals for the Fourth Circuit has extended quasi-judicial immunity to protect guardians ad litem acting as advocates for children in judicial

proceedings. <u>Fleming</u>, 42 F.3d at 889. In <u>Fleming</u>, a father brought a § 1983 claim alleging a deprivation of his civil rights after a private lawyer and guardian ad litem presented to the trial court false allegations of the father's instability and misconduct during a child custody dispute. Nonetheless, the Fourth Circuit found the GAL was entitled to quasi-judicial immunity, explaining that "[a]ll of the actions complained of occurred within the judicial process; in short, [the GAL] lied about X to procure order Y. Even if [the GAL] lied to the judge in open court, she was still acting as the guardian, and is immune from § 1983 liability." <u>Fleming</u>, 42 F.3d at 889. <u>Cf</u>. <u>Vosburg v. Dep't of Soc. Servs.</u>, 884 F.2d 133, 138 (4th Cir. 1989)("[S]ocial workers are absolutely immune from liability resulting from their decision to file a removal petition[.]").

There is a policy concern that a denial of immunity to non-judicial officers, such as guardians ad litem and social workers, will lead to regular civil suits filed by aggrieved parties:

> [T]he denial of absolute immunity here has the potential to adversely affect the efficient functioning of the state's child welfare system. . . . Parents, resentful of and humiliated by an attempt to usurp their rights, would likely channel their frustration into the ascription of improper and malicious actions to the State's advocate.

<u>Vosburg</u>, 884 F.2d at 137. (internal quotations omitted). The purpose of granting quasi-judicial immunity to guardians ad litem is that they are "non-judicial officers performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." tasks  <u>Leonard v. Starkey</u>, No. 1:14-CV-42, 2015 WL 8347323, at *4 (N.D.W. Va. Dec. 8, 2015) (citing <u>Ward v. Plymale</u>, 2013 WL 6164277 (S.D. W.Va. Nov. 25, 2013)(internal quotations and citations omitted).

Here, the Complaint indicates that Defendant Antolini was working in a capacity integral with the judicial process – performing duties as guardian ad litem in this abuse and neglect proceeding – when the acts and omissions complained of occurred. As described in the Complaint,

Defendant Antolini presented testimony to the Court which highlighted concerns regarding the children's living situation, including the cleanliness of the home. ECF No. 1 at 9. Like in Fleming, taking all factual allegations in the Plaintiffs' Complaint as true, even if Defendant Antolini presented lies to the judge in open court, legal precedent requires that Defendant Antolini is immune from § 1983 liability as she was acting as in her capacity as guardian ad litem when she made these statements. See also Briscoe v. LaHue, 460 U.S. 325, 345–46 (1983) (a police officer who committed perjury while testifying was still entitled to immunity from § 1983 liability).

Defendant Antolini also asserts a novel argument that she should also be afforded quasi-judicial immunity against all state law claims as a quasi-employee under the reasoning found in the dicta of Mooney v. Frazier, 693 S.E.2d 333 (W. Va. 2010) and based upon the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-5(a)(2), (b). The undersigned is not aware of, nor does Defendant Antolini cite, any case law which extends the West Virginia Governmental Tort Claims and Insurance Reform Act to provide statutory quasi-judicial immunity in such an attenuated way to guardians ad litem.

Quasi-judicial immunity for guardians ad litem against state law claims is not directly provided for by the West Virginia Governmental Tort Claims and Insurance Reform Act. Rather, the Public Defender Services Act of 1989, further examined below, see infra IV.E.2, more clearly provides guardians ad litem with the same absolute immunity, including qualified immunity for all administrative and investigation duties, as prosecutors for state law claims.

For the reasons set forth herein, the undersigned finds that Defendant Antolini is entitled to quasi-judicial immunity from suit for the § 1983 claims, though not the state law claims, and her Motion to Dismiss, ECF No. 24, should be **GRANTED** accordingly.

2.  Prosecutorial Immunity

Defendant Antolini argues that she, as a court-appointed guardian ad litem paid by Public Defender Services to represent the minor children in these abuse and neglect proceedings, is entitled to the same absolute prosecutorial immunity which is afforded prosecutors such as Defendant Armstrong. See supra Section IV.D.

Any attorney who provides legal representation, including legal representation as a guardian ad litem, under appointment by a circuit court, family court or by the Supreme Court of Appeals, and whose only compensation therefore is paid under the provisions of the Public Defender Services Act of 1989, shall be immune from liability arising from that representation to the same extent that prosecuting attorneys are immune from liability. W. Va. Code § 29-21-2(3), 20.

Plainly, Public Defender Services Act of 1989, W. Va. Code § 29-21-1 *et seq.* mandates that Defendant Antolini is to be afforded the same absolute prosecutorial immunity against Plaintiffs' state law causes of actions as Defendant Armstrong. Therefore, the undersigned **RECOMMENDS** that the presiding judge also find that absolute prosecutorial immunity bars all state law claims against Defendant Antolini for her litigation representation as guardian ad litem, and Plaintiff's Complaint, ECF No. 1, be **DISMISSED WITH PREJUDICE** for failure to state a claim against Defendant Antolini upon which relief may be granted.

3.  Litigation Privilege

The doctrine of litigation privilege is "generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action." Susko v. City of Weirton, No. 5:09CV1, 2011 WL 221825, at *3 (N.D.W. Va. Jan. 20,

2011), aff'd, 443 F. App'x 805 (4th Cir. 2011) (citing Clark v. Druckman, 218 W.Va. 427, 624 S.E.2d 864, 871 (W.Va.2005)). "Further, the litigation privilege generally operates to preclude actions for civil damages arising from an attorney's conduct in the litigation process." Id. "[The litigation privilege] extends to all statements or communications in connection with the judicial proceeding ... as long as the communications are related to the prospective judicial action." Collins v. Red Roof Inns, Inc., 211 W.Va. 458, 566 S.E.2d 595, 600 (W.Va.2002) (quoting Hawkins v. Harris, 141 N.J. 207, 661 A.2d 284, 289 (N.J.1995)).

It is also well-established that witnesses benefit from litigation privilege and enjoy immunity for their statements or communications within judicial proceedings. See Briscoe v. LaHue, 460 U.S. 325, 325, 103 S. Ct. 1108, 1110, 75 L. Ed. 2d 96 (1983)(providing history of common law immunity protections for witnesses); Wilson v. Bernet, 218 W. Va. 628, 635, 625 S.E.2d 706, 713 (2005)(holding expert witnesses must be provided immunity for their testimony at trial); Johnson v. Brown, 13 W. Va. 71, 113–14 (1878)("[N]o action will lie against a witness, for what he says or writes, when giving evidence either before a court of justice or before a military court of enquiry"). This immunity encourages witnesses "to speak freely without the specter of subsequent retaliatory litigation for their good faith testimony. The immunity was created at common law to shield the percipient [fact] witness who was called into court to testify as to what he saw, heard, or did that was relevant to an issue in the case." Wilson v. Bernet, 218 W. Va. 628, 632, 625 S.E.2d 706, 710 (2005) (quoting Christopher M. McDowell, Note, Authorizing the Expert Witness to Assassinate Character for Profit: A Reexamination of the Testimonial Immunity of the Expert Witness, 28 U. Mem [.] L.Rev. 239, 275 (1997). Furthermore, "[t]he court system simply could not function if it permitted a losing party to sue an adverse witness ... simply because the losing party feels the witness testified falsely or inaccurately. In the absence of specific evidence

to the contrary, we must presume that witnesses testify truthfully." <u>Williamson v. Harden</u>, 585 S.E.2d 369, 374 (2003).

In the present matter, Defendant Antolini served as both an attorney and witness in her role as guardian ad litem. Plaintiffs bring claims for intentional infliction of emotional distress, civil conspiracy, and civil rights violations against Defendant Antolini for acts and omissions as guardian ad litem including, but not limited to, taking photos of the children, presenting evidence to the court, communicating with other attorneys, case workers, and court staff, and providing sworn testimony. While the Supreme Court of Appeals of West Virginia has not squarely held that guardian ad litem are entitled to litigation privilege as attorneys representing and testifying to the best interests of the children, this longstanding doctrine would likely provide Defendant Antolini and other guardians ad litem additional immunity from civil action.

In sum, various immunity doctrines preclude Plaintiffs from bringing suit against Defendant Kristen Antolini for her conduct performed pursuant to her role as guardian ad litem. For her tasks integral and intertwined with the judicial process, such as providing testimony evidence, and submitting filings to the circuit court, Defendant Antolini is protected from § 1983 claims by quasi-judicial immunity and from civil causes of action under state law due to transferred prosecutorial immunity under W. Va. Code § 29-21-2 *et seq*. The doctrine of litigation privilege would likely further serve to protect Defendant Antolini from suit for any and all conduct related to representing the best interests of the children in judicial proceedings. For any administrative and investigatory tasks, because there are no facts that allege Defendant Antolini acted objectively unreasonable for a guardian ad litem in light of clearly established legal rules, Defendant Antolini is immune from suit under qualified immunity likely to the same extent as Defendant Armstrong.

The undersigned thus **RECOMMENDS** that Defendant Antolini's Motion to Dismiss, ECF No. 24, be **GRANTED**.

### F. Plaintiffs fail to state a plausible claim against Defendant Shaffer, whose conduct is protected by absolute judicial immunity.

Defendant Shaffer asserts that "each and every allegation against Judge Shaffer relates to rulings he made in his role as a circuit court judge presiding over those proceedings." ECF 25-1 at 5. Accordingly, Defendant Shaffer argues "[t]he claims against Judge Shaffer contained in the Complaint are, therefore, barred by absolute judicial immunity and warrant dismissal with prejudice." Id.

Judicial immunity, like the other forms of official immunity discussed above, "is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). This includes immunity from suits where a plaintiff seeks injunctive relief in addition to damages. See Lepelletier v. Tran, 633 Fed. Appx. 126, 127 (4th Cir. 2016) ("[C]laims seeking injunctive relief against a sitting state court judge for actions taken in his judicial capacity also were barred by the plain language of 42 U.S.C. § 1983"); Roth v. King, 449 F.3d 1272 (D.C.Cir. 2006) (stating that "42 U.S.C. §1983, as amended in 1996 by the [FCIA], explicitly immunizes judicial officers against suits for injunctive relief); and El v. Delgado, No. 1:10CV38, 2010 WL 5201195, at *9 (N.D.W. Va. Nov. 5, 2010), report and recommendation adopted, No. 1:10CV38, 2010 WL 5200949 (N.D.W. Va. Dec. 20, 2010).

Judicial immunity is "overcome in only two sets of circumstances." Mireles, 502 U.S. at 11. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (internal citations omitted). Accordingly, even allegations of bad faith, error, malice and corruption will not overcome judicial immunity,

where a judge was acting in the his or her judicial capacity and where the judge had jurisdiction. Mireles, 502 U.S. at 11-13. Similarly, a judge "is immune from suit even when a party alleges that a judge's ruling is the result of a conspiracy with an adversarial party." Coonts v. Randolph Cty. Circuit Court Judge, No. 2:15-CV-21, 2015 WL 12791398, at *3 (N.D.W. Va. Sept. 18, 2015)(citing Dennis v. Sparks, 449 U.S. 24, 27 (1980)).

Here, Defendant Shaffer is immune from suit because all alleged conduct in the Complaint relates judicial actions taken pursuant to the Circuit Court of Preston County's jurisdiction over the state abuse and neglect proceedings and/or criminal proceedings. Defendant Shaffer's decision not to recuse himself is a judicial action protected by absolute judicial immunity. Defendant Shaffer's decision to take into evidence the photographs and testimony submitted by the child protective services worker, guardian ad litem, and prosecutor in this case are decisions from the bench which are protected by absolute judicial immunity. The decision issued to temporarily remove the children from their home, after finding educational neglect and unsuitable living conditions, is protected by absolute judicial immunity – even if Defendant Shaffer had acted in conspiracy with others, bad faith, in error, or with malice or bias against suboxone users or against religious, homeopathic believers.

Due to the doctrine of absolute judicial immunity, Defendant Shaffer is immune from suit for *all* conduct alleged in the Complaint. Accordingly, the undersigned **RECOMMENDS** that Defendant Shaffer's Motion to Dismiss, ECF No. 25, be **GRANTED**, and the Complaint be dismissed with prejudice for failure to state a claim upon which relief may be granted.

G. **Defendant Poier benefits from statutory immunity for actions pursuant to her official duties a WV DHHR Caseworker, and the Complaint fails to state any plausible claim for relief against Defendant Poier.**

Defendant Carrie Poier argues that Plaintiffs' Complaint fails to allege any acts or omissions attribute to her and, therefore, the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and West Virginia Code § 49-2-802(h).

West Virginia Code § 49-2-802(h) provides:

No child protective services caseworker may be held personally liable for any professional decision or action taken pursuant to that decision in the performance of his or her official duties as set forth in this section or agency rules promulgated thereupon. However, nothing in this subsection protects any child protective services worker from any liability arising from the operation of a motor vehicle or for any loss caused by gross negligence, willful and wanton misconduct, or intentional misconduct.

W. Va. Code § 49-2-802(h). Alternatively stated, a case worker cannot be held personally liable for acts performed as part of her official duties absent allegations that an injury occurred due to the case worker's operation of a motor vehicle, gross negligence, willful and wanton or intentional misconduct. Id.

Here, it is undisputed that Defendant Poier is a child protective services caseworker for the state of West Virginia. The Complaint names Defendant Poier as a "C.P.S. Case Worker." ECF No. 1 at 3. Defendant Poier confirms her title in her Motion to Dismiss. ECF No. 27 at 4-5. While Plaintiffs summarily argue that all of the Defendants, including Defendant Poier, have forfeit any immunity they are entitled to based upon their alleged misconduct, Plaintiffs fail to make *any* mention of Defendant Poier outside of the case caption and, thus, fail to put forth *any* facts to the Court of misconduct for which Defendant Poier can be held personally liable.

Plaintiffs filings focus on the actions and omissions of Elizabeth Blake and WV DHHR's Child Protective Services ("CPS") – neither of which are named in this suit. See e.g. ECF No. 1 at ("Elizabeth Blake, as the person entrusted with doing what is in the best interest of the kids, should have ensured her documentation be received, yet didn't."); ECF No. 36 at 43 ("The cps worker,

Elizabeth Blake, was the only cps worker to be in the Plaintiff's home and the only cps worker to interact with their children.").

In their Response, Plaintiffs concede that Defendant Carrie Poier "was not involved in the beginning" and "was not involved in the case until much much later." ECF No. 36 at 43-44.

Because the Complaint provides no factual allegations regarding acts or omissions by Defendant Poier. the Court cannot reasonably infer that Defendant Poier engaged in a conspiracy against Plaintiffs, acted intentionally to inflict of emotional distress, or personally violated Plaintiffs' constitutional rights. Conclusory statements that Plaintiffs have been wronged by Elizabeth Blake and CPS are insufficient to hold Defendant Poier personally liable.

Even the facts provided in the Response, were they to be incorporated into an Amended Complaint, would be insufficient to state a plausible claim against Defendant Poier, especially considering her statutory immunity. See ECF No. 36 at 44 (Defendant Poier "is simply just writing on documentation what the GAL and Prosecutor tell her to" and "[a]lso on the home safety plan, Ms. Poier provides that 'living arrangements seriously endanger a child's physical health.'").

Because there are no factual allegations of acts, omissions, or wrongdoing by Defendant Poier, especially considering Defendant Poier is entitled to statutory immunity absent gross negligence, willful and wanton or intentional misconduct, Plaintiffs have failed to state a plausible claim upon which relief may be granted.

Furthermore, as articulated above, even if Plaintiffs showed sufficient facts under Rule 12(b)(6) to show why Defendant Poier may be personally liable despite W. Va. Code § 49-2-802(h), Defendant Poier is entitled to qualified immunity because Plaintiffs have not shown that acts or omissions by Defendant Poier that violate clearly established rights.

Accordingly, the undersigned **RECOMMENDS** that Defendant Poier's Motion to Dismiss, ECF No. 27, be **GRANTED** and all claims against Defendant Poier be dismissed for failure to state a plausible claim.

## V.    CONCLUSION

First, this Court is bound to liberally construe the filings of *pro se* plaintiffs and hold such litigants to a less stringent standard than the one expected for the formal filings of lawyers. Consequently, the undersigned **RECOMMENDS** that Defendant Antolini's Motion to Strike, ECF No. 42, be **DENIED**. However, the undersigned warns Plaintiffs that further failures to comply with the local rules, including exceeding page limits and providing excessive responses without leave of the Court, may lead to future sanctions.

Second, under the Rooker-Feldman doctrine, this Court lacks the subject matter jurisdiction to review and "void" any order of the Circuit Court of Preston County as requested within the Plaintiffs' Complaint. The undersigned accordingly **RECOMMENDS** that Plaintiffs' § 1983 claims seeking to directly challenge the results of the state court decisions be **DISMISSED**. The undersigned **FINDS** this Court may exercise jurisdiction over the § 1983 claims for monetary and injunctive relief regarding alleged misconduct not addressed in the underlying state case.

Third, to the extent that Plaintiffs' Complaint may be read to include claims of misconduct by officials occurring prior to 2018, West Virginia's applicable statute of limitation is two years, and the undersigned **RECOMMENDS** that Plaintiffs' time-barred claims be **DISMISSED**.

Fourth and finally, each and every one of the named Defendants is entitled to immunity under various immunity doctrines, and Plaintiffs' Complaint thus fails to state a claim upon which relief may be granted. For the alleged conduct related to their administrative and investigative duties, Defendants Antolini, Armstrong, and Poier are protected against suit by qualified

immunity. Defendants Antolini and Armstrong are further entitled to prosecutorial immunity for any and all conduct related to their legal representation in the judicial proceedings. As guardian ad litem, Defendant Antolini is further entitled to quasi-judicial and litigation privilege as an attorney and witness. Defendant Steven Shaffer, by virtue of his role as presiding circuit court judge is entitled to absolute judicial immunity as all conduct articulated in the complaint were judicial actions taken pursuant to the court's jurisdiction. Lastly, Defendant Poier is entitled to statutory immunity for official actions taken pursuant to her job as a child protective services case worker, and furthermore, the Complaint fails to articulate any actions or omissions by Defendant Poier let alone actions of gross negligence, willful and wanton or intentional misconduct for which she may be held personally liable. As meritorious immunity doctrines preclude suit and Plaintiffs have not sufficiently plead a plausible claim to overcome said immunity, the undersigned **RECOMMENDS** each of the Motions to Dismiss be **GRANTED**, and Plaintiffs' Complaint be **DISMISSED** with prejudice.

## VI.    RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that:

- Defendant Antolini's Motion to Strike, ECF No. 42, be **DENIED;**

- Defendant Antolini's Motion to Dismiss, ECF No. 24, be **GRANTED**;

- Defendant Shaffer's Motion to Dismiss, ECF No. 25, be **GRANTED**;

- Defendant Armstrong's Motion to Dismiss, ECF No. 26, be **GRANTED**;

- Defendant Poier's Motion to Dismiss, ECF No. 27, be **GRANTED**; and

- Plaintiffs' Complaint, ECF No. 1, be **DISMISSED WITH PREJUDICE.**

Any party shall have **fourteen days** from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections,**

**identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed **ten (10) typewritten pages or twenty (20) handwritten pages**, **including exhibits**, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all counsel of record and to the *pro se* Plaintiffs by certified mail, return receipt requested.

Respectfully submitted on May 19, 2021.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE